984 A.2d 225

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Mina BAHGAT.

Misc. Docket AG No. 20, Sept. Term, 2008.

Court of Appeals of Maryland.

Nov. 18, 2009.

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n of Maryland), for Petitioner.

No argument on behalf of respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

On September 3, 2009, this Court

ORDERED ... that the Respondent, Mina Bahgat be, and he is hereby, disbarred, effective immediately, from the practice of law in this State and his name as an attorney has been stricken from the register of attorneys in this Court (Maryland Rule 16–713). Respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule 16–761 for which sum judgment is entered in favor of the Attorney Grievance Commission of Maryland against Mina Bahgat.

This opinion states the reasons why that Order was entered.

## Background

Respondent was admitted to the Maryland Bar on June 15, 2004. On August 20, 2008, the Attorney Grievance Commission (Petitioner) filed a Petition for Disciplinary Action in which it asserted that Respondent violated several Maryland Rules of Professional Conduct (MRPC) and § 10–306 of the Business Occupations and Professions Article of the Maryland Code. The record shows that, on October 4, 2008, Respondent was served personally with a copy of the Petition, as well as a copy of this Court's August 21, 2008 Order directing that the charges against him "be heard and determined by Judge William J. Rowan, III of the Sixth Judicial Circuit, in accordance with Maryland Rule 16–757[.]"

On October 20, 2008, Respondent filed a response to the Petition, but did not thereafter comply with Bar Counsel's discovery requests. On April 6, 2009, Judge Rowan held a hearing on the Petition. Respondent did not appear at that hearing. On April 10, 2009, Judge Rowan filed an Opinion that included the following findings and conclusions:

> There have been no disciplinary actions against [Respondent] except the present matter. There is no evidence that he has maintained or does now maintain a Maryland office....
>
> He was employed by Just Law International, a Virginia law firm, from September, 2004, until his termination on March 1, 2007. He is not a member of the Virginia Bar and during the time in question practiced "immigration law," exclusively.
>
> All of the facts of which complaint is made apparently took place in Virginia. He was supervised, if at all, by Annigje Buwalda, Esquire, a member of the Virginia Bar, a founder of Just Law International, and a Court determined expert in immigration law.
>
> The specific facts giving rise to this Complaint involve Bahgat's interactions, or lack thereof, with Ely Rodriquez, an immigrant, and her husband, Raymond Rodriquez. The

critical time period that Bahgat dealt with the clients was from November, 2005, to December, 2006.

Complaint is also made of misrepresented filings by Bahgat with the National Student Center Public Institution Division in Ontario, Canada. In these filings[,] Bahgat sought relief from interest payments on student loan repayments. Specifically, Bahgat represented in writing to the Student Center that he was unemployed and had received no income from July, 2005, through December, 2005; May, 2006, through December, 2006; January, 2007, and February, 2007. . . . In fact, he was employed by Just Law International and was paid by the law firm $37,249.98 in 2005, $55,000.00 in 2006, and $8,750.00 in 2007. He was terminated by the firm on March 1, 2007. . . .

Mr. Rodriquez was at all times a United States citizen. He met and married Mrs. Rodriquez, a German citizen. In 2005, she came to the United States as an immigrant and sought permanent residency. As a result of certain filings with the United States Citizenship and Immigration services, on October 19, 2005, Mrs. Rodriquez was advised in a formal "decision" by the U.S. Department of Citizenship and Immigration Services that her application for permanent residency was, because of lack of evidence, considered "abandoned and hereby denied." . . . Thereafter, Mr. and Mrs. Rodriquez were referred to Just Law International and began their dealings with Mr. Bahgat.

In late 2005 or early 2006, Mr. and Mrs. Rodriquez sent two $500.00 fee money orders and filing fee money order in the amount of $110.00 to Bahgat. . . . Bahgat promised to file Form I–130, a Petition for Alien Relative, and a Motion to Re-open the original "abandoned and denied" application, together with Form I–485, an application to adjust status. . . .

One $500.00 money order was credited by Just Law International to the account of another Bahgat client by the name of "Atanna or Atunda". . . . Buwalda further testified there was no record at Just Law International of receipt of the second $500.00 money order or the $110.00 filing fee.

In his Response[,] Mr. Bahgat admitted receiving the $110.00 money order but claimed he "mistakenly believed the money order was for reimbursement of the filing fee"....

Although Bahgat claimed to Mr. and Mrs. Rodriquez that he filed various forms and a Motion to Re-open the Rodriquez case with the Department of Citizenship and Immigration ..., in fact nothing was filed on behalf of Mrs. Rodriquez with the United States Department of Citizenship and Immigration between October 19, 2005, the date of the decision denying the original application for permanent residency, and November 18, 2006, nor did anyone enter his or her appearance on behalf of the clients in the immigration file....

On November 18, 2006, a "Decision" was purportedly again issued by the United States Citizenship and Immigration Services denying the application for permanent residency of Ely Rodriquez.... This "Decision" was sent to the clients by Bahgat.... This Decision was not genuine, was not issued by the United States Citizenship and Immigration Services, and a copy of the same is not a part of the original Rodriquez immigration file.... In summary, the representatives of the United States Department of Citizenship and Immigration Services testified that no one ever entered their appearance on behalf of Ely Rodriquez, no Motion to Re-open the file on behalf of Mrs. Rodriquez was ever filed between October 19, 2005, and November 18, 2006, nor was there ever any appeal filed on behalf of Mrs. Rodriquez between October of 2005 and November, 2006....

In December, 2006, Ms. Buwalda received correspondence from the clients terminating the services of Just Law International. Upon investigation, Mrs. Buwalda learned that Bahgat represented Mr. and Mrs. Rodriquez. The law firm internal records reflected receipt of the $500 money order but credit to another Bahgat client. With regards to the $110.00 filing fee, Bahgat claimed to Mrs. Buwalda he did not have it and he did not know where it was. The law firm

returned to the clients one $500.00 money order and the $110.00 filing fee.

Mrs. Rodriquez testified she was told by Bahgat she would have to return to Germany to re-file for permanent residency after the October 19, 2005, decision. Mrs. Buwalda voiced the expert opinion that Bahgat did not competently represent Mrs. Rodriquez because he never determined why her case was considered abandoned. If she returned to Germany, she would have been subject to a "10 year bar" unless she received a waiver from the Department of Immigration Services.

\*     \*     \*

### Conclusions of Law

... While all the incidents involving these violations occurred in the State of Virginia, the Respondent is subject to the disciplinary authority of the State of Maryland....

### Rule 1.1—Competence

[1] MRPC 1.1 provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

The Court finds by clear and convincing evidence that Bahgat violated MRPC 1.1 because he agreed to represent Mr. and Mrs. Rodriquez in their immigration matter wherein Ely Rodriquez sought permanent residency, and because he literally did nothing on their behalf with the United States Citizenship and Immigration services in connection with her application for permanent residency, Bahgat clearly did not provide competent representation to Mr. and Mrs. Rodriquez—beginning with his failure to even enter his appearance on their behalf and his subsequent lack of performing any services, whatsoever, on their behalf.

### Rule 1.3—Diligence

MRPC 1.3 provides:

"A lawyer shall act with reasonable diligence and promptness in representing a client."

While no professional shortcoming is more widely resented than procrastination, here Bahgat did nothing whatsoever to advance the client's cause or endeavor. The Court finds by clear and convincing evidence that Bahgat violated Rule 1.3.

### Rule 1.4—Communication

MRPC 1.4 provides:

"(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The Court finds by clear and convincing evidence that Bahgat violated Rule 1.4. He misled and failed to keep the clients informed when he told them that he would or had filed a Motion to Re-open. He further misled the clients and failed to keep them reasonably informed when he transmitted to them the purported and fabricated November 18, 2006, Decision of the United States Department of Citizenship and Immigration Services.

### Rule 1.15—Safekeeping Property

MRPC 1.15[, in pertinent part,] provides as follows:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules[, and records shall be created and maintained in accordance with the Rules in that Chapter]. Other property shall be identified specifically as such and appropriately safeguarded[, and records of its receipt and distribution shall be created and maintained]. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after [the date the record was created].

* * *

■ (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute."

The evidence was unclear as to who, "Bahgat or a member of the office staff[,]" credited the $500.00 fee money

order to a client other than to Mrs. Rodriquez; but the evidence was clear and convincing Bahgat failed to deposit into the client's trust fund expenses that were paid in advance, and wrongfully and criminally took possession of same. The Court finds by clear and convincing evidence that the Respondent violated Rule 1.15.

### Rule 1.16—Declining or Terminating Representation

MRPC 1.16[, in pertinent part,] provides:

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

There was no evidence before the Court concerning declining or terminating representation under Maryland Rule 1.6. Accordingly, the Court finds by clear and convincing evidence that Bahgat did not violate Rule 1.6.

### Rule 8.4—Misconduct

MRPC Rule 8.4[, in pertinent part,] provides:

"It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]"

When Bahgat misappropriated the $110.00 filing fee he misused trust money under Section 10–306, Business Occu-

pations and Professions Article, and committed a misdemeanor under Section 10–606(b). Furthermore, the Court has heretofore found that Bahgat, by clear and convincing evidence, violated various Rules of Professional Misconduct. Finally, Bahgat's overall conduct in failing to enter his appearance in the immigration case, misrepresenting to his clients that various pleadings had been filed, and fabricating and creating a false Decision which he transmitted to his clients is conduct that is prejudicial to the administration of justice. The evidence is again overwhelming that Bahgat engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation when he misrepresented to the student loan officials his lack of employment income in order to secure interest relief on student loan repayments. The evidence is clear and convincing that Bahgat violated Rule 8.4.

### Rule 16–609—Prohibited Transactions

■ MRPC 16–609[, in pertinent part,] provides:

"a.   Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

b.   No cash disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer[.]"

The evidence is clear and convincing that Bahgat used the $110.00 filing fee and took same into his sole possession when it should have been deposited in the trust account of Just Law International. The evidence is clear and convincing that Bahgat violated Maryland Rule 16–609.

### Section 10–306—Misuse of trust money. Business Occupations & Professions Article, Annotated Code of Maryland

Maryland Annotated Code, Section 10–306 provides:

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

As stated heretofore, the evidence is clear and convincing that Bahgat used trust money for a purpose other than the purpose for which the trust money was entrusted to him. Bahgat clearly violated Section 10–306.

### *Section 10–307—Disciplinary Action. Business Occupations & Professions Article, Annotated Code of Maryland*

Maryland Annotated Code, Section 10–307 provides:

"A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under Section 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide."

Bahgat is clearly subject to disciplinary proceedings for his violation of Section 10–306, the misuse of trust money, wherein he took possession of the filing fee paid in advance by the clients, rather than depositing same in the law firm trust [account]. Thus, the evidence is overwhelming that Mr. Bahgat is subject to disciplinary proceedings, as set forth hereinabove.

Because neither the Petitioner nor the Respondent noted any exceptions to Judge Rowan's Findings of Fact and Conclusions of Law, pursuant to Md. Rule 16–759(b)(2)(A), we elected to "treat [those] findings of fact as established for the purpose of determining appropriate sanctions[.]" According to the Petitioner (in the words of its Recommendation for Sanction):

This Court regularly has expressed intolerance for members of the Bar who engage in conduct involving dishonesty,

fraud, deceit or misrepresentation. As the Court commented in *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001):

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

> As respondent has failed to participate in these proceedings by not attending the hearing before the Honorable William J. Rowan, III and has not demonstrated a compelling reason not to disbar, disbarment is the appropriate sanction for the respondent's dishonest and deceitful conduct as well as his misappropriation of his client's money.

Respondent did not provide this Court with any reason why the Commission's recommendation should be rejected. After conducting a *de novo* review of the record, this Court concluded that immediate disbarment was required to protect the public interest, and therefore entered the September 3, 2009 Order by which Respondent was "disbarred, effective immediately."