16 A.3d 181

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Andrew Gregory DE LA PAZ.

Nos. 50, 65, Sept. Term, 2009.

Court of Appeals of Maryland.

March 24, 2011.

536

Dolores O. Ridgell, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Atty. Grievance Commission of Maryland), for petitioner.

No argument on Behalf of the Respondent.

Submitted to BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

ADKINS, J.

Petitioner Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed two Petitions for Disciplinary or Remedial Action (collectively "the Petitions") against Respondent Andrew Gregory De La Paz. In August 2009, Bar Counsel charged De La Paz with violating the Maryland Rules of Professional Conduct ("MRPC") in his capacity as representative of Angelo Callaham. Specifically, Bar Counsel alleged that De La Paz violated the following rules: (1) Rule 1.1 (Competence);[1] (2) Rule 1.3 (Diligence);[2] (3) Rule 1.4 (Communication);[3] (4) Rule 1.5(a) (Fees);[4] (5)

---

1. **Rule 1.1. Competence**

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. **Rule 1.3. Diligence**

 A lawyer shall act with reasonable diligence and promptness in representing a client.

3. **Rule 1.4. Communication**

Rule 1.16(d) (Declining or Terminating Representation);[5] and (6) Rule 8.4(d) (Misconduct).[6] Later, in December 2009, Bar

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. **Rule 1.5. Fees.**

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

\* \* \*

5. **Rule 1.16. Declining or Terminating Representation.**

\* \* \*

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

6. **Rule 8.4 Misconduct**

Counsel produced another list of charges against De La Paz. In connection with his representation of Danny Simons, De La Paz was charged with violating (1) Rule 1.1 (Competence); (2) Rule 1.3 (Diligence); (3) Rule 1.4 (Communication); (4) Rule 1.16(d) (Declining or Terminating Representation); (5) Rule 8.1(b) (Bar Admission and Disciplinary Matters);[7] and (6) Rule 8.4(d) (Misconduct).

The two sets of charges resulted in two different hearings at the Circuit Court for Prince George's County. In both cases, De La Paz failed to file an answer to Bar Counsel's Petitions or respond to its Requests for Admissions of Facts and Genuineness of Documents; thus, the factual averments in those Petitions were deemed admitted, in accordance with Md. Rules 2–323(e), 2–613, and 16–754(c). Moreover, De La Paz failed to move to vacate the default orders entered by the hearing judge or to attend the hearings. Regarding Bar Counsel's August 2009 charges (hereinafter referred to as "AG 50"), the hearing judge issued Findings of Facts and Conclusions of Law, in which he found by clear and convincing evidence that De La Paz violated MRPC Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), and 8.4(d). In a later hearing regarding the December 2009 charges (hereinafter referred to as "AG 65"), the same hearing judge found by clear and convincing evidence that De La Paz violated MRPC Rules 1.1, 1.3, 1.4, 1.16(d), 8.1(b), 8.4(d). Neither party filed exceptions to the

---

It is professional misconduct for a lawyer to:

\* \* \*

(d) engage in conduct that is prejudicial to the administration of justice....

7. **Rule 8.1. Bar Admission and Disciplinary Matters**

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

hearing judge's findings of fact or conclusions of law. As a result, we accept the hearing judge's findings of fact as established for the purpose of determining the proper sanction. *See* Md. Rule 16–759(b)(2)(A).[8] The AGC recommends disbarment for the protection of the public in the present case. Based upon our *de novo* review of the record, we agree with the hearing judge's conclusions, and hold that disbarment is the appropriate sanction for De La Paz's violations of the Rules of Professional Conduct.

## THE HEARING COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 1. AG 50

The AGC's investigation of De La Paz was triggered by the complaint of Angelo Callaham, a defendant in a civil action who was solicited as a client by De La Paz.[9] The hearing judge made the following findings of fact by clear and convincing evidence:

> On or about November 2, 2007, Angelo Callaham was sued in the District Court of Maryland in Prince George's County. About the same time, [Respondent solicited Mr. Callaham as a client and later agreed] to represent [him] in the lawsuit. At the time of the engagement, Respondent advised Mr. Callaham that he would charge a flat fee of $1,000[.] Mr. Callaham paid the $1,000.00 fee in two installments of $500 each on November 28 and December 20, 2007. At the time of the engagement, Mr. Callaham had not yet

---

**8.** Maryland Rule 16–759(b)(2)(A) states: "(2) Findings of Fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

**9.** In AG 50 and AG 65, the hearing examiner provided the following background on De La Paz: "Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 23, 1998. During times relevant to this matter, Respondent maintained [a law office] in Montgomery, Prince George's, and Baltimore Counties, Maryland."

been served with the summons in the litigation, and Respondent advised Mr. Callaham to take no action at this time.

At the time of the engagement, Respondent was employed with the Law Offices of Raymond Carignan, Chartered. Pursuant to the employment agreement between Respondent and Raymond Carignan, Respondent received $400.00 of the $1,000.00 fee and the Law Offices of Raymond Carignan, Chartered, maintained the balance.

In the first week of January 2008, Respondent resigned from the Law Offices of Raymond Carignan, Chartered, and began a solo practice in Bethesda, Maryland.

During the period January through March 2008, Respondent spoke with Mr. Callaham, [Mr. Callaham's] sister, or both on several occasions. During these communications, Respondent informed Mr. Callaham that the summons had not been served on either Mr. Callaham or the other defendant in the case, and that Respondent would let Mr. Callaham know when this occurred. Respondent did not enter his appearance in the pending litigation and made no effort to resolve the dispute which led to the litigation.

On or about April 2008, Respondent began working for a law firm in Baltimore County, Maryland. Respondent failed to notify Mr. Callaham that he had moved his practice and failed to provide sufficient information to Mr. Callaham to enable him to contact the Respondent.

On or about July 2008, Mr. Callaham received a summons to appear in court[.] Following receipt of the summons, Mr. Callaham called and left messages for Respondent[, but] received no return calls from Respondent. On August 8, 2008, Mr. Callaham appeared pursuant to the summons in the District Court of Maryland for Prince George's County, where Respondent failed to appear at the hearing. On or about August 8, 2008, Mr. Callaham, without the aid of counsel, agreed to enter into a Consent Judgment.

As a result of these actions, on or about August 13, 2008, Mr. Callaham filed a complaint against Respondent to [the AGC]. Mr. Callaham received a $600 refund from the Law

Offices of Raymond Carignan, Chartered. Initially, Respondent also agreed to return the $400 he received from the prepaid fee to Mr. Callaham[, with payments beginning on or about May 17, 2009.] Respondent failed to make any payments and ... the Conditional Diversion Agreement was [later] revoked by [the AGC] due to Respondent's material default.

From these facts the hearing judge found, "by clear and convincing evidence," that De La Paz violated all of the charged Rules. Specifically, he opined:

### A. MRPC 1.1—Competence

\* \* \*

Here, Respondent was engaged to represent Mr. Callaham [and] paid in advance for his services. Respondent failed to apprise Mr. Callaham of the status of the case, despite Respondent's assurances to do so. Respondent neither entered his appearance, contacted the opposing party for a possible resolution to the case, nor provided Mr. Callaham legal representation on August 8, 2008, for Mr. Callaham's hearing. Therefore, Respondent completely failed to act to protect the client's interests in the lawsuit. . . .

### B. MRPC 1.3—Diligence

\* \* \*

Pursuant to the analysis above, Respondent's failure to enter his appearance, failure to entertain potential resolution on behalf of his client, and failure to provide Mr. Callaham with legal representation the day of his hearing demonstrated a lack diligence, promptness, and overall competence in representation of his client. . . .

### C. MRPC 1.4—Communication

\* \* \*

Here, Respondent failed to communicate with his client from the date of engagement of representation in April 2008 until after Mr. Callaham's hearing on August 8, 2008. Although Mr. Callaham made real efforts to contact Respondent by telephone prior to the hearing by leaving messages, his messages were not returned. His client was not kept advised concerning the status of the matter and Mr. Callaham's reasonable requests for information were not promptly complied with by Respondent.... Furthermore, Respondent failed to provide his client with legal advice to provide his client an opportunity to make informed decisions, either prior to, during or after ... August 8, 2008 hearing. In fact, the client was not even kept informed concerning the location of Respondent's office and how to contact him....

### D. MRPC 1.5—Fees

\* \* \*

Respondent was paid in advance to represent Mr. Callaham in the District Court litigation. Here, Respondent utterly failed to provide the necessary services and never earned the fee. For this reason, the fee was unreasonable ...

### E. MRPC 1.16(d)—Declining or Terminating Representation

\* \* \*

The uncontested evidence established that, following the completion of the litigation and termination of the representation, Respondent failed to return to Mr. Callaham the unearned fee to which he was entitled to reimbursement....

### F. MRPC 8.4(d)—Misconduct

\* \* \*

As indicated above, Respondent failed to provide competent and diligent representation, failed to keep the client

informed, charged an unreasonable and unearned fee and failed to return the unearned prepaid fee. [The] Respondent engaged in the type of conduct that reflected negatively on the legal profession and that he, thereby, engaged in conduct prejudicial to the administration of justice[.]

(Case citations omitted).

### 2. AG 65

In the second case, the AGC investigation had been triggered by the complaint of Danny Simons, a plaintiff whose personal injury suit was transferred from his original counsel to Respondent for litigation purposes. The same hearing judge made the following findings of fact by clear and convincing evidence:

On or about April 12, 2004, Danny L. Simons ... was injured in an automobile accident. Shortly after the accident, [Simons] engaged the firm of Paul Klein & Associates, P.C.

On or about February 16, 2005, Mr. Klein notified [Simons] that his file was going to be transferred to Respondent for litigation, [and Simons did not object.] On or about February 18, 2005 [Simons] signed a fee sharing disclosure statement representing that: (1) Respondent was not an employee of Paul Klein & Associates, P.C.; (2) would not be supervised by Mr. Klein; and (3) that [Simons] consented to a fee sharing arrangement between Mr. Klein and Respondent.

On or about March 31, 2005, Respondent filed a complaint in the District Court of Maryland for Prince George's County on behalf of [Simons]. Prior to filing the complaint, Respondent did not inform [Simons] that the claim would be limited to [that court's] $20,000 jurisdictional limit[.] Thereafter, Respondent failed to obtain service on the defendant.

[Later], Respondent notified [Simons] that the named defendant had passed away. Respondent also informed [Simons] that he was in the process of determining whether an estate had been opened for the defendant, and that, if

not, additional steps would be required before his case could go forward.[ ]

On or about December 20, 2005, Respondent wrote to [Simons] informing him that an estate had not been opened for the deceased defendant but that he would be opening an estate. Respondent indicated that as soon as the estate had been set up and a new trial date scheduled, he would contact [Simons].

[Three and a half months later, Simons left a phone message for Respondent.] In response, Respondent wrote to [Simons] and advised him that he was still in the process of opening the defendant's estate in order to proceed with the litigation. Respondent promised to contact [Simons] as soon as a new trial date was obtained.

On or about April 16, 2007, Respondent wrote to [Simons] and informed him that he would be opening the estate by the end of May 2007, so that his case could proceed. Respondent failed to ever open the estate.

[Six months after Respondent's second letter,] the District Court dismissed the complaint for failure to prosecute. Respondent failed to inform [Simons] that his case had been dismissed. [Instead, Simons] found out about the dismissal by going to the Courthouse and inquiring.

On or about January 13, 2009, Respondent represented [Simons] in a criminal matter[.] At that time, [Simons] demanded to know what had happened to his civil case. Respondent told him that he would be in contact with him as soon as he established himself in a new law office.

Following the conversation of January 13, 2009, Respondent failed to provide [Simons] with contact information, such as a phone number or an address where he could be reached. From January 13, 2009 through April 13, 2009, Respondent did not communicate with [Simons].

On or about April 13, 2009, [Simons] wrote to Respondent by Certified Mail[, but the letter] was returned by the Postal Service. The same letter was mailed again with

confirmation of delivery on May 13, 2009. Respondent did not respond to the [Simon's May 13] letter[.]

On or about June 26, 2009, [the AGC] received a complaint against Respondent from [Simons's] new attorney. On or about July 8, 2009, [the AGC] sent Respondent a letter notifying him of the complaint and requesting a written response thereto within 15 days of July 8, 2009. Respondent failed to provide a response to this letter. On July 29, 2009, Assistant Bar Counsel sent Respondent a second request for [an immediate] written response to the allegations in the complaint[, but once again, Respondent did not respond.]

From the facts as found above, the hearing judge once again found, by clear and convincing evidence, that De La Paz had violated all of the charged rules. Specifically, he concluded:

### A. MRPC 1.1—Competence

\* \* \*

On or about December 20, 2005, Respondent determined a need to open an estate for the deceased defendant in order to proceed with Complainant's action. A year passed without any activity taken on behalf of the case. As of April 16, 2007, [the] estate was never opened, and despite Respondent's additional promise to Complainant to open the estate no later than the end of May 2007, Respondent failed to open the estate. As reflected in the case's docket entries, no activity occurred from April 24, 2006 through October 12, 2007, which was the date of the Request for Order of Dismissal. On October 19, 2007, the District Court complaint was dismissed for failure to prosecute pursuant [to] Md. Rule 3–507. . . . Respondent filed a complaint on behalf of his client, but failed to open the estate, pursue the claim, and act in his client's best interests. Thus, Respondent failed to demonstrate the requisite legal knowledge, skill, thoroughness, and preparation reasonably necessary for competent representation. . . .

### B. MRPC 1.3—Diligence

\* \* \*

Pursuant to the analysis above, Respondent's failure to perform on behalf of his client and failure to protect his client's interests in his case demonstrated a lack of reasonable diligence, promptness, and overall competence in representation of his client....

### C. MRPC 1.4—Communication

\* \* \*

Here, Respondent failed to communicate with Complainant for extensive time periods, including a period of more than a year. When Complainant's case was dismissed for failure to prosecute, Respondent failed to communicate to Complainant the disposition of the case, any consequences as a result of the dismissal, and any potential limits on recovery. Furthermore, as of January 2009, Respondent failed to communicate to Complainant any address or contact number where the Respondent could be reached. Finally, Respondent failed to respond to letters written by Complainant regarding his case.... Respondent failed to keep his client informed about the status of his case to the extent reasonably necessary for Complainant to reach an informed decision.

### D. MRPC 1.16(d)—Declining or Terminating Representation

\* \* \*

Here, Respondent, for all intents and purposes, abandoned his representation of Complainant with regard to the personal injury claim sometime in 2007 when Respondent failed to open the estate and act to prevent the dismissal of the complaint. Additionally, Respondent failed to inform Complainant or otherwise take steps reasonably practicable to protect his client's interests, such as informing Complainant that he could not provide the necessary legal services

required, returning his file, and allow Complainant an opportunity to obtain new counsel. . . .

 *E. MRPC 8.1(b)—Bar Admissions and Disciplinary Matters*

\* \* \*

 Here, evidence established that on June 26, 2009, [the AGC] received a complaint against Respondent from Complainant's attorney. On July 8, 2009, [the AGC] sent Respondent a letter notifying him of the complaint and requesting a written response within 15 days of July 8, 2009. Petitioner did not receive a response. On July 29, 2009, a second request for a written response to the complaint was sent. Again, [the AGC] did not receive a response. Both requests from [the AGC] were sent to Respondent's last known address, and neither letter was returned by the United States Postal Service. . . . Respondent received Bar Counsel's letter in regard to the complaint and knowingly failed to respond thereto, in violation of MRPC 8.1(b).

 *F. MRPC 8.4(d)—Misconduct*

\* \* \*

 As indicated above, Respondent failed to provide competent and diligent representation, failed to keep the client informed, and failed to take steps reasonably practicable to protect his client's interests. . . . Respondent engaged in the type of conduct that reflects negatively on the legal profession, and shows that Respondent engaged in conduct prejudicial to the administration of justice[.]

(Case citations omitted).

## DISCUSSION

### *Standard of Review*

 "In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an indepen-

dent review of the record." *Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 167, 994 A.2d 928, 940 (2010). Yet,

> [e]ven though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. This Court gives deference to the hearing judge's assessment of the credibility of witnesses. Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence. All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court.

*Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008) (citations omitted). "In other words, the ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v. Fox,* 417 Md. 504, 11 A.3d 762 (2010) (quotation marks and citations omitted). Both parties are permitted to file "(1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition...." Md. Rule 16–758(b). If neither party files any exceptions, "the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. Rule 16–759(b)(2)(A).

### *Exceptions*

Neither Bar Counsel nor Respondent De La Paz note any exceptions to the judge's findings of fact or conclusions of law in either case. Thus, we accept the lower court's findings of fact in both cases as established.

### *Conclusions of Law*

With respect to the Angelo Callaham complaint, the hearing judge determined that De La Paz violated MRPC Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), and 8.4(d). The same hearing judge concluded that De La Paz violated MRPC Rules 1.1, 1.3, 1.4, 1.6(d), 8.1(b), 8.4(d) in his representation of Danny Simons. As most of the rules allegedly violated overlap, we will com-

bine the two complaints and address each of these conclusions in turn.

■ Rule 1.1 requires an attorney to provide competent representation to a client. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MRPC 1.1. In *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 54, 891 A.2d 1085, 1097 (2006), we explained that an attorney can violate Rule 1.1 even though he or she has the adequate knowledge or skill to represent a client. "Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation." *Id.* Thus, we held that an attorney, who had practiced law successfully for roughly 30 years, violated Rule 1.1 when he contracted to represent clients in a simple adoption proceeding, but never filed any action on their behalf. *Id.* Similarly, in *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 402–03, 784 A.2d 516, 531–32 (2001), we overrode the hearing judge's conclusion that the attorney did not violate Rule 1.1 because he possessed extensive knowledge and experience in handling automobile negligence cases [and he was aware of the type of injury involved in the relevant action]. Instead, we held that the attorney's failure to appear at a hearing and at trial constituted incompetence under Rule 1.1. *Id.* We stated that "a complete failure of representation is the ultimate incompetency[,]" and thus competency includes, "at a minimum, the attorney's presence at any court proceeding for which he or she was retained, absent an acceptable explanation for that attorney's absence." *Id.*

■ Here, in both AG 50 and AG 65, De La Paz wholly neglected to pursue his clients' claims. In AG 50, complainant Callaham retained De La Paz to defend him and paid the attorney's fee in advance. Yet De La Paz never entered his appearance in the case or contacted the plaintiff. Moreover, De La Paz did not appear for Callaham's hearing, leaving his client to enter into a Consent Judgment without the aid of counsel. Similarly, in AG 65, although De La Paz initially

filed a complaint on behalf of Simons, he subsequently failed to open the estate or otherwise act to protect Simon's claim. As a result, the District Court dismissed the complaint for failure to prosecute. In both cases, De La Paz utterly failed to represent his clients; thus, he violated Rule 1.1.

Closely linked to De La Paz's violation of 1.1 for failure to pursue his clients' claims is his alleged violation of Rule 1.3, which requires an attorney to "act with reasonable diligence and promptness in representing a client." An attorney violates Rule 1.3 when he or she does "nothing whatsoever to advance the client's cause or endeavor." *Attorney Grievance Comm'n v. Bahgat,* 411 Md. 568, 575, 984 A.2d 225, 229 (2009). In AG 65, De La Paz never opened the estate to protect his client's claim, leading the court to dismiss his initial complaint for failure to prosecute. In AG 50, he never even entered his appearance, and then later failed to show up at his client's hearing. Suffice it to say, in both instances, De La Paz violated Rule 1.3.

De La Paz also violated Rule 1.4, as each of his cases was marked by an impermissible lack of communication. In *Attorney Grievance Comm'n v. Kwarteng,* 411 Md. 652, 658, 984 A.2d 865, 869 (2009), we held that an attorney violated Rule 1.4 "by failing to communicate with [his client] and keep him informed of the status of his legal matters despite [his client's] repeated efforts to speak with him." Likewise, in AG 50, Callaham's numerous telephone messages to De La Paz were met with silence, and in AG 65, De La Paz did not respond to Simons's letters regarding his case. Moreover, De La Paz failed to inform Simons that his case had been dismissed; instead, Simons found out by traveling to the courthouse and inquiring himself. Finally, in both cases, De La Paz neglected to apprise his clients that he had moved his practice and/or did not provide them with his new contact information.

In AG 50, De La Paz was also charged with violating Rule 1.5, which prohibits the charging of unreasonable fees. A fee that is reasonable on its face becomes

unreasonable if the attorney does virtually no work after receiving it. *See Guida*, 391 Md. at 52–53, 891 A.2d at 1096–97 ("[A]lthough $ 735.00 as a fee for a relatively straightforward adoption may. not be unreasonable on its face, in the context of Guida's failure to perform the services to any meaningful degree ..., the fee became unreasonable."). Here, we agree with the hearing judge that, after Callaham paid the full attorney's fee in advance, De La Paz "utterly failed to provide the necessary services and never earned the fee." Thus, his $1,000 fee was unreasonable.

De La Paz's abrupt and unannounced departure from his practice constituted a violation of Rule 1.16(d). This rule requires that, "upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." MRPC 1.16(d). In AG 50, De La Paz moved his practice without informing Callaham and, following the completion of Callaham's litigation matter, failed to return his unearned fee. *See Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 651, 835 A.2d 542, 544–45 (2003) (attorney violated Rule 1.16(d) when he abandoned his practice without notifying his clients and did not return his unearned fee). Moreover, as the hearing judge observed in AG 65, De La Paz "failed to open the estate and act to prevent the dismissal of the [Simons's] complaint" and then failed to notify Simons "or otherwise take steps reasonably practicable to protect his client's interests, such as informing [Simons] that he could not provide the necessary legal services requires, returning his file, and allow[ing] [Simons] an opportunity to obtain new counsel." Accordingly, we conclude that De La Paz violated Rule 1.16(d) in both cases. *See Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 399, 946 A.2d 1009, 1016 (2008) (Same rule was violated by an attorney whose neglect resulted in dismissal of client's complaint for failure to prosecute and who then did not return the unearned fee).

Exclusive to AG 65, Bar Counsel charged De La Paz with violating Rule 8.1(b), which prohibits an attorney from knowingly failing to respond to a disciplinary authority's re-

quests for information. Here, the AGC sent notice of Simons's complaint to De La Paz and requested a response, but no response was given. The same result occurred with the AGC's second request. Both letters were mailed to De La Paz's last known address, and neither was returned to the AGC by the United States Post Office. Thus, De La Paz is presumed to have received the letters. *See Stiegler v. Eureka Life Ins. Co.*, 146 Md. 629, 647, 127 A. 397, 404 (1925) ("If it be proved that a letter which was sufficiently prepaid in stamps, was correctly addressed and then mailed, this is evidence to establish that the letter was duly delivered to the person addressed."). Accordingly, De La Paz's silence is a knowing failure to respond to the AGC's requests in violation of Rule 8.1(b).

▪▪▪▪▪ The final violation charged in both cases is that of Rule 8.4(d), which states that it is "professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." Conduct prejudicial to the administration of justice is that which "reflects negatively on the legal profession and sets a bad example for the public at large[.]" *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 22, 922 A.2d 554, 566 (2007). This clearly occurred in AG 65, where De La Paz's failure to petition [10] to open the estate for the deceased defendant resulted in the dismissal of his client's complaint. *See Attorney Grievance Comm'n v. Thaxton,* 415 Md. 341, 362, 1 A.3d 470 (2010) (attorney violated, *inter alia,* Rule 8.4(d) when his absence from client's hearings prompted dismissal of the client's action for failure to prosecute). Moreover, De La Paz delayed Simons's pursuit of his complaint by promising to petition to open the estate by the end of May 2007, neglecting to do so, and then failing to inform Simons of the complaint's dismissal.

---

10. A creditor must file a petition to institute "judicial probate," a court proceeding "for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a personal representative." Md.Code (1974, 2001 Repl.Vol.), § 5–401 of the Estates and Trusts Article.

 Similarly, De La Paz's conduct in AG 50 was prejudicial to the administration of justice. Despite soliciting Callaham as a client, De La Paz never entered his appearance on Callaham's behalf, and then failed to appear at the hearing for which he was retained. *See Tinsky*, 377 Md. at 651, 835 A.2d at 545 (attorney violated Rule 8.4(d) by not appearing for both of his client's trials). "An attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and intrudes upon the operation and dignity of the court." *Attorney Grievance Comm'n v. Ficker*, 319 Md. 305, 315, 572 A.2d 501, 506 (1990) (citations omitted). Here, although the hearing progressed as scheduled, Callaham was left without the benefit of counsel. *See Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000) (attorney violated 8.4(d) even though criminal trial proceeded in attorney's absence). Accordingly, we agree with the hearing judge that De La Paz violated Rule 8.4(d) in both AG 50 and AG 65.

### Sanction For Violations of MRPC Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), 8.1(b), and 8.4(d)

 Having determined that De La Paz violated all of the charged rules, we turn now to the appropriate sanction to be imposed. In so doing, we are mindful that the purpose of disciplinary proceedings is "to protect the public and the public's confidence in the legal profession rather than to punish [an errant] attorney . . . [and] to deter other lawyers from violating the Rules of Professional Conduct." *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 720, 955 A.2d 755, 768 (2008). To accomplish this, the sanction should be "commensurate with the nature and the gravity of the misconduct and the intent with which it was committed." *Id.* Thus, the style and severity of the sanction "depend[ ] upon the facts and circumstances of the cases, taking account of any particular aggravating or mitigating factors." *Id.*

 Here, the AGC recommends that De La Paz be disbarred. "We previously have found disbarment to be ap-

propriate when attorneys repeatedly neglect client affairs." *Tinsky*, 377 Md. at 655, 835 A.2d at 547 (2003); *see also Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 290, 293, 793 A.2d 535, 543, 545 (2002) (six separate complaints of neglect resulted in attorney disbarment); *Attorney Grievance Comm'n v. Manning*, 318 Md. 697, 705, 569 A.2d 1250, 1254 (1990) (attorney's continual neglect of client matters demonstrated a pattern warranting disbarment); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 365–66, 347 A.2d 556, 562–63 (1975) (attorney's habitual neglect of client matters led to disbarment). In both cases before us, De La Paz clearly neglected his clients, leaving one client to fend for himself at his own hearing and the other to lose his cause of action entirely for failure to prosecute. De La Paz also repeatedly ignored his clients' inquiries into the status of their cases, and then moved his practice without informing his clients of his new contact information. He then later declined to respond to Bar Counsel's requests for information. De La Paz has not presented to this Court any mitigating factors that might justify a lighter sentence; indeed, he has not presented anything to this Court.

Ultimately, an examination of the totality of the circumstances in this case persuades us that disbarment is appropriate. We shall so order.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANDREW GREGORY DE LA PAZ IN THE SUM OF THESE COSTS.**