Attorney Grievance Comm'n v. Mark Howard Allenbaugh, Misc. Docket AG Nos. 9 & 25, September Term, 2015

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT** – Court of Appeals disbarred lawyer who failed to competently represent clients in two separate matters by failing to file a brief in an appeal and failing to obtain visas for a client and family in an immigration case, failed to communicate with a client, failed to perform work for which he had been paid, failed to keep a client's funds in an attorney trust account, delayed proceedings in an appeal, knowingly failed to respond to Bar Counsel, and engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2) (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(c) (Safekeeping Property), 3.2 (Expediting Litigation), 3.4(c) (Fairness to Parties and Opposing Counsel), 8.1(b) (Disciplinary Matters), 8.4(d) (Conduct That is Prejudicial to Administration of Justice) and 8.4(a) (Violating the MLRPC).

Circuit Court for Montgomery County
Case No. 31172-M

Argued: October 7, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG Nos. 9 & 25

September Term, 2015
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MARK HOWARD ALLENBAUGH
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Opinion by Watts, J.
_____

Filed: October 27, 2016

This attorney discipline proceeding involves a lawyer who failed to competently represent clients in two separate matters by failing to file a brief in an appeal and failing to obtain visas for a client and family in an immigration case, failed to communicate with a client, failed to perform work for which he had been paid, failed to keep a client's funds in an attorney trust account, delayed proceedings in an appeal, knowingly failed to respond to Bar Counsel, and engaged in conduct that would negatively impact the perception of the legal profession of a reasonable member of the public.

Mark Howard Allenbaugh ("Allenbaugh"), Respondent, faces disciplinary action for two distinct instances of misconduct. The first matter is a reciprocal discipline case ("the reciprocal discipline matter"). On April 16, 2015, Bar Counsel, on behalf of the Attorney Grievance Commission, Petitioner, filed with this Court a "Petition for Disciplinary or Remedial Action," alleging that the United States Court of Appeals for the Fourth Circuit ("the Fourth Circuit") had suspended Allenbaugh from the practice of law before the Fourth Circuit for two years, based on his failure to competently and diligently represent a client and to respond to court orders. In the petition, Bar Counsel alleged that Allenbaugh's misconduct before the Fourth Circuit violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC")[1] and sought reciprocal discipline. This petition

_____

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. The revised Rules relevant to AG No. 9 and AG No. 25 are now numbered as follows: Maryland Rule 19-301.1 (Competence), Maryland Rule 19-301.3 (Diligence), Maryland Rule 19-301.4 (Communication), Maryland Rule 19-301.5 (Fees), Maryland Rule 19-301.15 (Safekeeping Property), Maryland Rule 19-303.2 (Expediting Litigation), Maryland Rule 19-303.4 (Fairness to Opposing Party and Counsel), Maryland Rule 19-308.1 (Disciplinary

initiated AG No. 9 in this Court.

On April 16, 2015, this Court ordered the parties to show cause why this Court should not impose reciprocal discipline. On June 1, 2015, Bar Counsel filed in this Court a response to the show cause order, requesting that this Court suspend Allenbaugh from the practice of law in Maryland for two years. On June 2, 2015, Allenbaugh filed in this Court a response to the show cause order, requesting that this Court dismiss the request for reciprocal discipline, or, in the alternative, that this Court impose a sanction that would be less severe than suspension, *i.e.*, a sanction without any suspension. On June 23, 2015, this Court designated the Honorable Anne K. Albright ("the hearing judge") of the Circuit Court for Montgomery County to hear AG No. 9.

The second matter ("the Raphael matter") arose when Alexander Raphael ("Raphael"), a client of Allenbaugh and a citizen of Canada, filed a complaint against Allenbaugh.[2] On March 13, 2012, Raphael retained Allenbaugh to assist him in obtaining immigrant visas and permanent resident benefits for himself, his wife, and his two daughters. Allenbaugh accepted an up-front fee of $5,000 from Raphael, and informed Raphael that he would put together an application for an L-1 visa.[3] Raphael, however, was ineligible for an L-1 visa, as he was not employed by an employer who could petition the

---

Matters), and Maryland Rule 19-308.4 (Misconduct). We will refer to the MLRPC because the misconduct at issue occurred before this change.

[2]Raphael filed the complaint with the State Bar of California, which forwarded the complaint to Maryland Bar Counsel.

[3]An L-1 visa is a non-immigrant, temporary visa that allows an alien to live in the United States while working for a foreign firm that does business in the United States. See In re Application of Sasson v. Sasson, 327 F. Supp. 2d 489, 492 n.5 (D.N.J. 2004); 8 U.S.C. § 1101(a)(15)(L).

United States Department of Homeland Security ("DHS") on his behalf. After receiving advice from Allenbaugh's assistant, Raphael's wife and two daughters subsequently entered the United States on non-immigrant, temporary visas, as Raphael had.

Raphael's wife returned to Canada to visit family. She was barred from re-entering the United States when she arrived at the border. DHS declared her inadmissible to the United States because she had overstayed her temporary visa. Raphael attempted to obtain assistance from Allenbaugh, but his attempt went unanswered. Raphael and his two daughters eventually returned to Canada. Allenbaugh never filed any paperwork with DHS on Raphael's behalf and never sought work authorization for Raphael from the United States Department of Labor. Despite having performed no legal services for Raphael, Allenbaugh retained the $5,000 that Raphael had paid him.

On July 9, 2015, Bar Counsel filed in this Court a second "Petition for Disciplinary or Remedial Action" against Allenbaugh, charging him with violating MLRPC 1.1 (Competence), 1.4(a)(2) (Communication), 1.5(a) (Reasonable Fees), 1.15(a), 1.15(c) (Safekeeping Property), 1.16(d) (Terminating Representation),[4] 8.1(b) (Disciplinary Matters), 8.4(d) (Conduct That is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC) in representing Raphael. This petition initiated AG No. 25 in this Court, and did not concern the conduct that was at issue in AG No. 9. On July 13, 2015,

---

[4]In the petition filed in the Raphael matter, Bar Counsel charged Allenbaugh with violating MLRPC 1.16(d). In its proposed findings of fact and conclusions of law submitted to the hearing judge, Bar Counsel did not mention MLRPC 1.16(d). In its opinion, the hearing judge did not discuss MLRPC 1.16(d) in either the findings of fact or conclusions of law. Bar Counsel does not except to the lack of a conclusion of law concerning MLRPC 1.16(d). Accordingly, we do not address the matter.

this Court designated the hearing judge to hear AG No. 25.

On September 2, 2015, Bar Counsel filed in this Court a motion to consolidate the two pending attorney discipline proceedings against Allenbaugh (AG Nos. 9 and 25). On September 3, 2015, this Court granted the motion to consolidate.

The hearing judge held motions hearings on November 9, 2015, December 14, 2015, and January 14, 2016, concerning Bar Counsel's motion for an order of default, Allenbaugh's motion to vacate the order of default, and Bar Counsel's motion for sanctions against Allenbaugh for failure to respond to discovery requests, respectively. The hearing judge scheduled an evidentiary hearing for April 4, 5, and 6, 2016. On April 4, 2016, Allenbaugh did not attend the scheduled hearing. On May 19, 2016, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that, as to the reciprocal discipline matter, Allenbaugh had violated MLRPC 1.1, 1.3, 3.2, 3.4(c), 8.1(b), 8.4(d), and 8.4(a). As to the Raphael matter, the hearing judge concluded that Allenbaugh had violated MLRPC 1.1, 1.4(a)(2), 1.5(a), 1.15(a), 1.15(c), 8.1(b), 8.4(d), and 8.4(a).[5]

Oral argument in this Court was scheduled on October 7, 2016; Allenbaugh failed to appear; and this Court issued a *per curiam* order in which we disbarred Allenbaugh. See

---

[5]There is a discrepancy in the hearing judge's opinion regarding which MLRPC Allenbaugh was found to have violated. The hearing judge indicated multiple times that Allenbaugh violated the above MLRPC; however, in the "Summary" section of the hearing judge's opinion, the hearing judge listed only MLRPC that pertain to the reciprocal discipline matter. Given that the violations not discussed in the Summary section are discussed by the hearing judge in detail elsewhere in the hearing judge's opinion, namely, in the hearing judge's conclusions of law, we view the inconsistency as an inadvertent error.

Attorney Grievance Comm'n v. Mark Howard Allenbaugh, ___ Md. ___, ___ A.3d ___, Nos. 9 & 25, Sept. Term 2015, 2016 WL 5867218, at *1 (Md. Oct. 7, 2016). We now explain the reasons for Allenbaugh's disbarment.

## BACKGROUND

After the consolidation of the reciprocal discipline matter and the Raphael matter, the hearing judge conducted a hearing and found the following facts, which we summarize.

On December 12, 2000, this Court admitted Allenbaugh to the Bar of Maryland. At the time that the following conduct occurred, Allenbaugh was also a member of the Bar of the District of Columbia, the Virginia State Bar, and the Criminal Justice Act ("CJA") Panel for the Fourth Circuit.

### The Reciprocal Discipline Matter

On September 11, 2014, the Fourth Circuit issued an order suspending Allenbaugh from the practice of law for two years. The Fourth Circuit also imposed a fine of $1,000 against Allenbaugh for abandoning a client and an additional fine of $1,000 for repeatedly ignoring orders of the court.

The Fourth Circuit's sanctions arose as the result of Allenbaugh's repeated inaction on behalf of a client, Monterio Riley ("Riley"), whom Allenbaugh was appointed to represent in the matter of United States v. Riley, No. 13-4766, pursuant to his membership on the CJA Panel. On December 13, 2013, the Fourth Circuit directed Allenbaugh to file a brief and joint appendix on or before January 17, 2014. Allenbaugh filed a motion requesting an extension to March 21, 2014, which the Fourth Circuit granted. On March 21, 2014, Allenbaugh moved to further extend the deadline to March 24, 2014. The Fourth

Circuit deferred action on the motion pending the filing of the brief and joint appendix by March 24, 2014. Allenbaugh did not file the brief or appendix.

On April 7, 2014, the Fourth Circuit issued a notice under Local Rule of the Fourth Circuit 46(g), stating that it would refer Allenbaugh's failure to comply with the briefing order to the Fourth Circuit's Standing Panel on Attorney Discipline ("the Standing Panel") unless Allenbaugh filed the brief and appendix by April 22, 2014. On April 22, 2014, Allenbaugh filed a motion to extend the deadline to April 25, 2014. The Fourth Circuit denied the motion. Allenbaugh subsequently informed the Clerk of the Court that he would file the brief and appendix by May 9, 2014. Allenbaugh failed to file the brief and appendix by that date, but informed the Clerk of the Court that he would file by May 19, 2014. Allenbaugh, ultimately, never filed the brief or joint appendix.

On June 13, 2014, the Standing Panel ordered Allenbaugh to show cause why he should not be struck as CJA appointed counsel in United States v. Riley. Additionally, the Standing Panel ordered Allenbaugh to show cause why his membership on the CJA Panel should not be revoked. Allenbaugh failed to file a response to the order to show cause by the due date of July 14, 2014.

On July 28, 2014, the Standing Panel struck Allenbaugh's appointment in United States v. Riley and revoked his membership on the CJA Panel. Additionally, the Standing Panel directed Allenbaugh to show cause why additional discipline should not be imposed against him. Allenbaugh again failed to respond to the show cause order. In an order dated September 11, 2014, the Fourth Circuit concluded that Allenbaugh had violated Rule 1.3 (Diligence) of the Virginia Rules of Professional Conduct, Rules 30(a) (Appendix to the

Briefs) and 31(a) (Serving and Filing Briefs) of the Federal Rules of Appellate Procedure, Local Rule of the Fourth Circuit 31(a) (Shortened Time for Service and Filing of Briefs in Criminal Cases), and the Fourth Circuit's briefing order in Riley. By virtue of the same order, the Fourth Circuit suspended Allenbaugh for two years from the practice of law before the Fourth Circuit and fined Allenbaugh $1,000 for abandoning Riley and another $1,000 for repeatedly failing to respond to court orders.

In its order, which was admitted into evidence by the hearing judge, the Standing Panel made the following findings:

> Allenbaugh failed to represent his client with reasonable diligence and failed to respond to directives of the Court. His violation of these duties was knowing and delayed his client's appeal. Allenbaugh has not provided any reason for the repeated lapses or any mitigating factor. Allenbaugh's statement to the Clerk that, in retrospect, he should have requested a continuance of the briefing schedule pending action by the Sentencing Commission on retroactive guideline amendments suggests only that counsel preferred to file the brief and appendix on his own schedule and fails to explain his repeated failure to follow Court orders.[6]

---

[6][In a footnote immediately following the above sentence, the Standing Panel stated:]

> Allenbaugh did not offer this or any other justification in a formal response to the Court's show cause orders, and the explanation is at odds with his actual motions to continue, which indicated that he was about to file his brief and appendix. For example, his March 14, 2014, "Final Motion to Continue Briefing Schedule" requested an extension to March 17, 2014, which the Court granted. His March 17, 2014, "Final Motion to Continue Briefing Schedule" requested an extension to March 21, 2014, which the Court granted. His March 21, 2014, "Final Motion to Continue Briefing Schedule" requested an extension to March 24, 2014, which the Court deferred pending filing of the brief and appendix by March 24, 2014. After he was notified[] that his failure to file the brief and appendix would be referred to the Standing Panel on Attorney Discipline if not remedied by April 22, 2014, Allenbaugh filed yet another "Final Motion to Continue

Suspension is generally the appropriate sanction when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client." ABA Standards § 4.42(a). Allenbaugh's failure to respond to two orders to show cause why he should not be disciplined for this misconduct was a further "serious breach of the attorney's professional obligations to the Court and the public," In re Warbaugh, 644 F.3d 173, 176 (2d Cir. 2011), and a factor aggravating his original misconduct.

We find that Allenbaugh's persistent failure to represent his client and comply with orders of the Court, and his failure to respond to the Panel's orders to show cause, warrant imposition of a fine and suspension from practice before this Court. The Panel fines Mr. Allenbaugh $1,000.00 for abandoning his client and an additional $1,000.00 for repeatedly ignoring orders of the Court, for a total fine of $2,000.00. The fine is payable by certified check to the Clerk of Court within 30 days of the date of this order. The Court also suspends Allenbaugh from practice before this Court for two years. Allenbaugh may apply for reinstatement after the suspension period, premised on his showing "familiarity with, and willingness to conform to, this court's rules and [his] obligations to clients, and [proof of] payment of any outstanding fines with interest from the due date." In Re Flannery, 186 F.3d 143, 146 (2d Cir. 1999).

(Alterations and footnote in original).

Allenbaugh subsequently failed to report to Bar Counsel that he had been sanctioned by the Fourth Circuit. Allenbaugh's sanction by the Fourth Circuit came to the attention of Bar Counsel as a result of information provided by the Office of Disciplinary Counsel for the District of Columbia, which instituted a reciprocal discipline proceeding against Allenbaugh in the District of Columbia following the Fourth Circuit's sanctions against him.

---

Briefing Schedule" to April 25, 2014, which the Court denied. Allenbaugh had not filed the brief and appendix or made any response to the order to show cause at the time the Court terminated his representation on July 28, 2014.

**The Raphael Matter**

In September 2011, Allenbaugh met Raphael, a citizen of Canada. Raphael told Allenbaugh that he and his wife and two daughters were interested in immigrating to the United States. Allenbaugh informed Raphael that he could obtain visas, permanent residency, and Social Security cards if Raphael invested $25,000 in a particular bail bonds business. Allenbaugh informed Raphael that the fee for these services would be $5,000.

Raphael subsequently came to the United States on a non-immigrant, temporary visa. Raphael then met with Allenbaugh in Allenbaugh's office in Costa Mesa, California and paid the $5,000 fee in a cashier's check to retain Allenbaugh. Allenbaugh did not place the funds in an attorney trust account, despite the fact that Raphael had not consented in writing to having his funds kept in an account other than an attorney trust account.

The retainer agreement between Allenbaugh and Raphael specified that Allenbaugh would obtain an L-1 visa for Raphael. This particular visa, however, was inapplicable to Raphael, as it requires an immigrant to be working for a foreign firm that does business in the United States. See supra Note 3. At some point, Raphael informed Allenbaugh that he had not invested $25,000 in the bail bond company. Raphael asked Allenbaugh whether he could still bring his family to the United States. Allenbaugh told Raphael that his assistant would follow up with him. Later, Allenbaugh's assistant informed Raphael that "all would be taken care of" and that Raphael could bring his family to the United States. Allenbaugh failed to advise Raphael of the type of visa that his family needed to enter the United States.

In July 2012, Raphael's wife and daughters came to the United States on non-

immigrant, temporary visas that were valid for six months. In March 2013, Raphael's wife returned to Canada to visit family and was subsequently denied re-entry into the United States. DHS denied Raphael's wife entry into the United States because she did not have the proper type of visa and because she had stayed in the United States after her prior visa had expired.

Raphael contacted Allenbaugh requesting assistance, and forwarded his wife's documents from DHS. Allenbaugh provided no assistance to Raphael regarding Raphael's wife's inadmissibility to the United States. Because Raphael's wife was unable to re-enter the United States, Raphael and his daughters returned to Canada. If Raphael and his daughters attempt to re-enter the United States, they too may be found inadmissible because they also overstayed their temporary visas and lack proper visas for those seeking to immigrate.

After returning to Canada, Raphael requested that Allenbaugh continue assisting him and his family in immigrating to the United States. Allenbaugh's assistant assured Raphael that Allenbaugh would file the necessary paperwork so that Raphael and his family could re-enter the United States. In a subsequent conversation, Allenbaugh advised Raphael to find a job in California that paid a six-figure salary to facilitate the immigration process. After July 6, 2013, Allenbaugh did not respond to Raphael's requests for updates.

Allenbaugh never drafted any documents on behalf of Raphael or his family for submission to DHS or the Department of Labor. Despite having conducted no meaningful legal work on Raphael's case, Allenbaugh did not refund any of the $5,000 that Raphael had paid him. Allenbaugh also failed to provide Raphael with any accounting of the funds

or any billing statements.

In October 2013, Raphael filed a complaint against Allenbaugh with the State Bar of California. Because Allenbaugh was not licensed to practice law in California, the State Bar of California forwarded Raphael's complaint to Maryland Bar Counsel. On March 21, 2014, Bar Counsel forwarded Raphael's complaint to Allenbaugh and requested a response within fifteen days. Allenbaugh requested and was granted an extension until May 5, 2014. Allenbaugh failed to respond by the deadline.

In a letter dated May 27, 2014, Bar Counsel again requested a response to Raphael's complaint. In a letter dated June 25, 2014, Allenbaugh briefly summarized his representation of Raphael and requested another extension to respond. In a letter dated July 8, 2014, Bar Counsel informed Allenbaugh that the Raphael matter had been docketed, and that his response to Raphael's complaint was due on July 29, 2014. Allenbaugh failed to respond. In a letter dated August 5, 2014, Bar Counsel requested a response within seven days. Once again, Allenbaugh failed to respond. In a letter dated August 19, 2014, Bar Counsel yet again requested a response. In a letter dated August 28, 2014, that was nearly identical to his June 25, 2014 letter, Allenbaugh again briefly summarized his representation of Raphael.

On September 12, 2014, Bar Counsel sent Allenbaugh ten specific questions, including two in which Bar Counsel sought Allenbaugh's trust account records and time sheets relating to his representation of Raphael. Allenbaugh did not respond. As part of the investigation conducted by Bar Counsel, an investigator made two appointments with Allenbaugh in September and October 2015. Allenbaugh did not keep either appointment.

**Procedural History**

On April 16, 2015, Bar Counsel, on behalf of the Attorney Grievance Commission, filed with this Court a Petition for Disciplinary or Remedial Action, alleging that Allenbaugh's misconduct before the Fourth Circuit also violated the MLRPC. On the same day, this Court issued a Show Cause Order, ordering the parties to show cause in writing why this Court should not impose corresponding discipline.

On June 1, 2015, Bar Counsel filed a response to the Show Cause Order, requesting that this Court impose discipline equal to that imposed by the Fourth Circuit and enter an order suspending Allenbaugh from the practice of law in Maryland for two years. On June 2, 2015, Allenbaugh filed a response and requested dismissal of the request for reciprocal discipline. In the alternative, Allenbaugh requested a "far less severe sanction—one without any suspension[.]"

In his response, Allenbaugh asserted that a suspension from the practice of law in Maryland was inappropriate for three reasons. First, Allenbaugh contended that the Fourth Circuit is not "another jurisdiction" within the meaning of Maryland Rule 16-773(a) because the Fourth Circuit is not a State. Second, Allenbaugh argued that his due process rights were violated because he did not receive a hearing prior to being sanctioned by the Fourth Circuit, and Allenbaugh claimed that he was not given actual notice regarding the severity of the sanctions that he faced. Third, Allenbaugh maintained that his conduct before the Fourth Circuit would not be grounds for a two-year suspension in Maryland. Regarding potential mitigating factors, Allenbaugh asserted that he suffered anxiety and depression around the time of United States v. Riley, which affected his ability to represent

- 12 -

Riley. Allenbaugh indicated in his response that he had sought treatment and that his anxiety and depression are under control. Allenbaugh also asserted that Riley had no meritorious grounds for appeal.[7] On June 8, 2015, Bar Counsel filed a reply to Allenbaugh's response, maintaining that this Court has jurisdiction to impose reciprocal discipline and contesting Allenbaugh's due process claims.

On July 9, 2015, Bar Counsel filed with this Court the second Petition for Disciplinary or Remedial Action, thus initiating the Raphael matter. On September 2, 2015, Bar Counsel filed in this Court a Motion to Consolidate the reciprocal discipline matter and the Raphael matter. This Court granted the motion.

On September 8, 2015, Bar Counsel filed a Motion for an Order of Default in the reciprocal discipline matter, which the hearing judge granted on September 25, 2015. Bar Counsel also filed a Motion for an Order of Default in the Raphael matter. On November 9, 2015, both parties appeared before the hearing judge for a hearing on the motion for an

---

[7]Allenbaugh characterizes his conduct as "failing to file an *Anders* brief that otherwise did not prejudice the client in any material way[.]" Allenbaugh maintains that he believed that there was no meritorious issue for the Fourth Circuit to consider in United States v. Riley and that he should have filed an Anders brief to withdraw his appearance. An Anders brief, also known as a "no-merit brief," is

> [a] brief filed by a court-appointed defense attorney who wants to withdraw
> from the case on appeal based on a belief that the appeal is frivolous. [] In an
> *Anders* brief, the attorney seeking to withdraw must identify anything in the
> record that might arguably support the appeal. The court then decides
> whether the appeal is frivolous and whether the attorney should be permitted
> to withdraw.

*Anders* Brief, Black's Law Dictionary (10th ed. 2014). Anders briefs are named after Anders v. California, 386 U.S. 738 (1967).

order of default. Allenbaugh appeared, but had not filed a responsive pleading. During the hearing, Allenbaugh requested an extension so that he could seek assistance of counsel, which the hearing judge denied. The hearing judge granted the motion for an order of default in the Raphael matter, but informed Allenbaugh that he could file a motion to vacate the order of default. On December 8, 2015, Allenbaugh filed a motion to vacate the order of default. On December 14, 2015, following a hearing, the hearing judge granted the motion to vacate the order of default in the Raphael matter. The hearing judge set deadlines for discovery and scheduled three days for the evidentiary hearing: April 4, 5, and 6, 2016. On December 23, 2015, Bar Counsel moved for sanctions based on Allenbaugh's failure to respond to Bar Counsel's discovery requests. The hearing judge ordered that all of Bar Counsel's Requests for Admissions of Fact and Genuineness of Documents were deemed admitted, and Allenbaugh was precluded from introducing evidence or testimony that had been sought by Bar Counsel during discovery. Allenbaugh failed to submit a prehearing statement; and on April 4, 2016, Allenbaugh did not appear for the scheduled evidentiary hearing. The hearing judge took the matter under advisement and offered both parties the opportunity to file proposed findings of fact and conclusions of law. Allenbaugh did not submit proposed findings of fact and conclusions of law.

## STANDARD OF REVIEW

Neither party excepts to any of the hearing judge's findings of fact; thus, we "treat the findings of fact as established[.]" Md. R. 19-741(b)(2)(A). In an attorney discipline proceeding, this Court reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's

- 14 -

conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the Petition [for disciplinary or remedial action] by clear and convincing evidence.").

As to reciprocal discipline cases, in Attorney Grievance Comm'n v. Burghardt, 442 Md. 151, 157-58, 110 A.3d 703, 707 (2015), we explained:

> In reciprocal discipline cases, pursuant to [Maryland] Rule 16-773(g), [now Maryland Rule 19-737] the factual findings of the originating jurisdiction are treated ordinarily as conclusive evidence of an attorney's misconduct. . . . When imposing a sanction, we have the discretion to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions, or to order a different or more serious alternative based on the existence of exceptional circumstances under [Maryland] Rule 16-773(e).

(Citations and internal quotation marks omitted). Maryland Rule 16-773(e), in turn, provided as follows:

> Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that: (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct; (3) the imposition of corresponding discipline would result in grave injustice; (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or (5) the reason for inactive status no longer exists.

(Paragraph breaks omitted). We have explained that Maryland "Rule 16-773(f) does not require us to impose identical discipline; rather, the Court has the long-established duty to impose discipline that is consistent with our attorney discipline jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the

sanction recommended by Bar Counsel." Burghardt, 442 Md. at 158, 110 A.3d at 707 (citations and internal quotation marks omitted). As such, "the sanction imposed depends not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent." Id. at 158, 110 A.3d at 707 (citation and internal quotation marks omitted).

## DISCUSSION

### (A) Conclusions of Law

Neither party excepts to the hearing judge's conclusions of law. For the below reasons, we uphold the hearing judge's conclusions of law.

### MLRPC 1.1 (Competence)

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness[,] and preparation reasonably necessary for the representation." MLRPC 1.1.

Here, clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.1 in representing Riley in the reciprocal discipline matter. Allenbaugh repeatedly failed to file a brief and appendix in Riley's appeal, even after being granted an extension. Although, in response to this Court's show cause order, Allenbaugh claimed he believed that Riley had no meritorious claims to bring on appeal in the Fourth Circuit—and, thus, that his inaction did not prejudice Riley—such excuses do not undermine the hearing judge's findings with respect to Allenbaugh's violation of MLRPC 1.1. Allenbaugh delayed filing the brief and appendix for six months, and even failed to follow through after promising the Clerk of the Court that he would file the brief and joint

appendix by certain dates. Further, "the factual findings of the originating jurisdiction are treated ordinarily as conclusive evidence of an attorney's misconduct." Burghardt, 442 Md. at 157, 110 A.3d at 707 (citation and internal quotation marks omitted).

Similarly, clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.1 in representing Raphael. Specifically, Allenbaugh failed to identify the proper type of visa for which Raphael and his family might qualify, instead advising Raphael to obtain an L-1 visa, for which Raphael was ineligible. After Allenbaugh's assistant provided advice to Raphael that Raphael's wife could immigrate to the United States, Allenbaugh failed to advise Raphael regarding the type of visa that he and his family would need and how to avoid violating immigration laws. As a result, Raphael's wife was subsequently deemed inadmissible to the United States by DHS, and Raphael and his daughters eventually left the United States because his wife could not return. Further, the hearing judge specifically noted that if Raphael and his daughters seek to re-enter the United States, they may be deemed inadmissible also because they, like Raphael's wife, overstayed their temporary visas.

### MLRPC 1.3 (Diligence)

"A lawyer shall act with reasonable diligence and promptness in representing a client." MLRPC 1.3.

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.3 in representing Riley. Over a six-month period, Allenbaugh failed to file a brief and appendix on Riley's behalf, despite being given multiple opportunities to do so.

## MLRPC 1.4(a)(2) (Communication)

"A lawyer shall . . . keep the client reasonably informed about the status of the matter[.]" MLRPC 1.4(a)(2).

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.4(a)(2) in representing Raphael. Allenbaugh provided no substantive information regarding the visa application to Raphael, but rather deferred to his assistant, who told Raphael that Allenbaugh would "take[] care of" Raphael's visa application, while providing no further details. When Allenbaugh spoke with Raphael directly, the extent of his legal advice was to suggest that Raphael obtain a job in California with a six-figure salary. Allenbaugh was also unresponsive to Raphael's request for assistance when Raphael's wife was denied re-entry into the United States. And, after July 6, 2013, Allenbaugh stopped communicating with Raphael entirely.

## MLRPC 1.5(a) (Reasonable Fees)

MLRPC 1.5(a) stated, in relevant part:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the

client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

"[I]t is well established that a fee arrangement is unreasonable if the attorney fails to perform any meaningful work on behalf of the client in exchange for the fee." Attorney Grievance Comm'n v. Chapman, 430 Md. 238, 275, 60 A.3d 25, 48 (2013).

Here, clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.5(a) in representing Raphael. Raphael paid Allenbaugh $5,000 for assistance with obtaining immigrant visas and permanent residence for Raphael and his family. Allenbaugh never drafted any immigration documents on Raphael's behalf to submit to DHS. Allenbaugh also never drafted applications for labor certification from the Department of Labor. In sum, despite having been paid, Allenbaugh never performed any work for Raphael or his family's immigration to the United States. Furthermore, Allenbaugh failed to send billing statements to Raphael and provided no accounting of how the funds were applied to work on Raphael's case. To date, Allenbaugh has still not refunded the $5,000.

### MLRPC 1.15(a) and 1.15(c) (Safekeeping Property)

MLRPC 1.15 stated, in relevant part:

A lawyer shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules,[8] and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified

---

[8]Effective July 1, 2016, the Maryland Rules that govern attorney trust accounts were relocated to Title 19, Chapter 400.

specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

"MLRPC 1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds. . . . A lawyer's failure to maintain his or her trust account separately from his or her personal funds is a violation of MLRPC 1.15(a)." Attorney Grievance Comm'n v. Landeo, 446 Md. 294, 332, 132 A.3d 196, 218 (2016) (citation, brackets, and internal quotation marks omitted).

MLRPC 1.15(c) provided:

Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

"A client has given 'informed consent' for payments not to be deposited into a client trust account only if the lawyer communicate[s] the risks associated with a fee arrangement that varies from the standard escrow arrangement." Attorney Grievance Comm'n v. Davy, 435 Md. 674, 704, 80 A.3d 322, 339 (2013) (citation and some internal quotation marks omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 1.15(a) and 1.15(c) in representing Raphael. Allenbaugh did not deposit Raphael's payment into a client trust account and did not obtain written consent to place the funds in an account other than an attorney trust account. Additionally, during the investigation of the Raphael matter, Bar Counsel requested Allenbaugh's trust account records and time sheets relating to his representation of Raphael; Allenbaugh did not

- 20 -

respond.

## MLRPC 3.2 (Expediting Litigation)

"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." MLRPC 3.2. "An attorney violates [MLRPC 3.2] by delaying to take fundamental litigation steps in pursuit of the client's interest." Attorney Grievance Comm'n v. Garrett, 427 Md. 209, 226, 46 A.3d 1169, 1179 (2012).

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 3.2 in representing Riley. Rather than expediting litigation to pursue Riley's interests, Allenbaugh failed to file a brief and appendix, which significantly delayed the resolution of Riley's appeal. Furthermore, Allenbaugh's repeated failure to file the brief and joint appendix eventually led the Standing Panel to remove him from the case.

## MLRPC 3.4(c) (Fairness to Opposing Party and Attorney)

"A lawyer shall not . . . knowingly disobey an obligation under the rules of the tribunal except for open refusal based on an assertion that no valid obligation exists[.]" MLRPC 3.4(c). This Court has held that a lawyer violates MLRPC 3.4(c) when he or she "repeatedly fail[s] to appear in court and to produce documents as directed by court order." Attorney Grievance Comm'n v. Mininsohn, 380 Md. 536, 570, 846 A.2d 353, 373 (2004) (citation and internal quotation marks omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 3.4(c) in his representation of Riley. Allenbaugh repeatedly disobeyed the Fourth Circuit's orders to file the brief and appendix in Riley's case.

- 21 -

**MLRPC 8.1(b) (Disciplinary Matters)**

"[A] lawyer in connection with a disciplinary matter, shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]" MLRPC 8.1(b). This Court has repeatedly held that a lawyer who knowingly fails to respond to Bar Counsel violates MLRPC 8.1(b). See Garrett, 427 Md. at 226, 46 A.3d at 1179 ("It goes without saying that [the lawyer]'s failures to respond to Bar Counsel's requests for information in connection with any of the nine investigations constitute nine separate violations of [MLRPC] 8.1."); Attorney Grievance Comm'n v. Kremer, 432 Md. 325, 336, 68 A.3d 862, 869 (2013) ("Bar Counsel asked repeatedly [for the lawyer] to respond to the Petition, but he did not. . . . [The lawyer]'s conduct is in violation of MLRPC 8.1(b).").

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 8.1(b) in the Raphael matter. Allenbaugh repeatedly failed to respond to Bar Counsel's requests for information regarding his representation of Raphael. Initially, Allenbaugh failed to respond to Raphael's complaint within fifteen days and was granted an extension to respond, but failed to respond by the new deadline as well. Subsequently, Allenbaugh responded to Raphael's complaint, but the response lacked specificity and merely summarized his representation of Raphael. After receiving Allenbaugh's response, on July 8, 2014, Bar Counsel wrote Allenbaugh requesting a response to Raphael's complaint by July 29, 2014; Allenbaugh failed to respond. By letter dated August 5, 2014, Bar Counsel again requested a response to Raphael's complaint, and

Allenbaugh failed to respond.

In a letter dated August 19, 2014, Bar Counsel yet again requested a response to Raphael's complaint. On August 28, 2014, Allenbaugh submitted a response that was nearly identical to the earlier response summarizing his representation of Raphael. On September 12, 2014, Bar Counsel forwarded to Allenbaugh ten questions, including two in which it sought Allenbaugh's trust account records and time sheets relating to his representation of Raphael. Allenbaugh did not respond. As part of the investigation conducted by Bar Counsel, an investigator made two appointments with Allenbaugh in September and October 2015. Significantly, Allenbaugh did not keep either appointment.[9]

**MLRPC 8.4(d) (Conduct That is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is

_____

[9]The hearing judge also concluded that Allenbaugh violated MLRPC 8.1(b) in the reciprocal discipline matter by failing to respond to the Standing Panel's show cause orders. Pursuant to Local Rule of the Fourth Circuit 46(g)(9), the Standing Panel acts on the Fourth Circuit's behalf by issuing show cause orders, considering all responses to show cause orders, and presiding over disciplinary hearings. Pursuant to Local Rule of the Fourth Circuit 46(g)(8), the Standing Panel is comprised of three active Fourth Circuit judges.

Although MLRPC 1.0 (Terminology) does not define "disciplinary authority," this Court has applied MLRPC 8.1(b) to failures to respond to a request by Bar Counsel for information, as opposed to failures to respond to a court's show cause order. For example, in Attorney Grievance Comm'n v. Williams, 446 Md. 355, 375, 132 A.3d 232, 244 (2016), this Court concluded that, "in failing knowingly to respond to Bar Counsel's letters demanding information about this case, Respondent violated MLRPC 8.1(b)."

Given that, in the reciprocal discipline matter, the hearing judge's findings of fact indicate that Allenbaugh failed to respond to a show cause order from a three-judge panel, rather than that Allenbaugh failed to respond to Bar Counsel or a similar authority, we shall refrain from finding that clear and convincing evidence supports the hearing judge's conclusion of law that Allenbaugh violated MLRPC 8.1(b) by failing to respond to the Standing Panel's show cause orders. This circumstance does not change the outcome of the case.

prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 505, 117 A.3d 38, 45 (2015) (brackets, citation, ellipsis, and internal quotation marks omitted). This Court has held that failing to communicate with clients and failing to respond to requests from Bar Counsel constitute violations of MLRPC 8.4(d). See Kremer, 432 Md. at 337, 68 A.3d at 869.

Clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 8.4(d) in his representation of Riley. Allenbaugh failed to take any action on Riley's behalf for over six months, which is conduct that would negatively impact the perception of the legal profession of a reasonable member of the public.

Similarly, clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 8.4(d) in his representation of Raphael. Allenbaugh charged Raphael $5,000 for legal services and then failed to take any action on Raphael's behalf. Allenbaugh provided Raphael with incorrect information regarding Raphael's eligibility for an L-1 visa, and was unresponsive to Raphael's request for assistance when Raphael's wife was deemed inadmissible by DHS and barred from re-entering the United States. Overall, Allenbaugh's failure to competently assist Raphael jeopardized Raphael's and his family's ability to successfully immigrate to the United States. As the hearing judge aptly observed, "it is prejudicial to the administration of justice when a lawyer places a client in greater legal jeopardy through lack of competence and lack of communication."

- 24 -

**MLRPC 8.4(a) (Violating the MLRPC)**

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Allenbaugh violated MLRPC 8.4(a). As discussed above, Allenbaugh violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.5(a), 1.15(a), 1.15(c), 3.2, 3.4(c), 8.1(b), and 8.4(d).

**(B) Sanction**

Bar Counsel recommends that we disbar Allenbaugh. Bar Counsel initially recommended that this Court impose reciprocal discipline against Allenbaugh based on his conduct before the Fourth Circuit, in addition to his default and failure respond to Bar Counsel during the pendency of the current proceedings. Considering the circumstances of the reciprocal discipline matter and the Raphael matter in the aggregate, however, Bar Counsel now recommends disbarment. In making this recommendation, Bar Counsel specifically notes that this Court has disbarred lawyers who flagrantly neglected their clients' affairs by failing to respond to requests from clients or to inquiries from Bar Counsel. Apart from his response to this Court's show cause order in the reciprocal discipline matter, Allenbaugh did not make a recommendation with respect to the appropriate sanction.

Bar Counsel is correct that this Court has disbarred lawyers for such violations. In Attorney Grievance Comm'n v. Thomas, 440 Md. 523, 558, 103 A.3d 629, 650 (2014), this Court held that disbarment was the proper sanction for a lawyer who "failed to communicate with his client, failed to complete any of the work that he was retained to

complete, and failed to participate in [the attorney discipline] proceedings in any way." In circumstances similar to the present case, a client retained the lawyer for assistance with an immigration issue. See id. at 531-32, 103 A.3d at 634. The lawyer engaged in misconduct by relaying inaccurate information about the immigration proceedings, failing to appear at his clients' hearing, failing to inform his client of the status of his case and that his client had been ordered removed from the United States, and accepting payment for work that he was not undertaking. See id. at 552-53, 103 A.3d at 646. This Court concluded that the lawyer had violated MLRPC 1.1, 1.3, 1.4, 8.1(b), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d). See id. at 551-56, 103 A.3d at 645-48. Determining that "[d]isbarment is warranted in cases involving flagrant neglect of client affairs," this Court concluded that disbarment was the appropriate sanction. Id. at 558, 103 A.3d at 649.

Similarly, in Attorney Grievance Comm'n v. De La Paz, 418 Md. 534, 557-58, 16 A.3d 181, 195 (2011), this Court disbarred a lawyer who violated MLRPC 1.1, 1.3, 1.4, 1.5, 1.16(d), 8.1(b), and 8.4(d). The lawyer

> clearly neglected his clients, leaving one client to fend for himself at his own hearing and the other to lose his cause of action entirely for failure to prosecute. [The lawyer] also repeatedly ignored his clients' inquiries into the status of their cases, and then moved his practice without informing his clients of his new contact information. He then later declined to respond to Bar Counsel's requests for information.

Id. at 558, 16 A.3d at 195. This Court did not note any aggravating factors, and observed that there were no mitigating factors. See id. at 558, 16 A.3d at 195. This Court explained: "We previously have found disbarment to be appropriate when attorneys repeatedly neglect

- 26 -

client affairs." Id. at 557-58, 16 A.3d at 195 (citations and internal quotation marks omitted).

In Attorney Grievance Comm'n v. Lara, 418 Md. 355, 367, 360, 14 A.3d 650, 658, 654 (2011), this Court disbarred a lawyer after he accepted payment from clients but then failed to complete any meaningful work on their behalf. As in the present case, the lawyer also failed to deposit these payments into a client trust account and never obtained written consent from his clients allowing him to keep the funds in an account other than an attorney trust account. See id. at 360, 14 A.3d at 653-54. The lawyer failed to return any of these fees to his clients, even after abandoning his law practice. See id. at 365, 14 A.3d at 656. Additionally, in conduct very similar to Allenbaugh's, the lawyer was unresponsive to Bar Counsel during the attorney discipline proceedings and failed to appear for the hearing. Id. at 365, 359, 14 A.3d at 656, 653. This Court determined that the lawyer had violated MLRPC 1.3; 1.4(a) and (b); 1.15(a), (c), and (d); 1.16(d); 8.1(b); and 8.4(a) and (d). See id. at 364, 14 A.3d at 656. Considering these serious violations, this Court held that the lawyer's "conduct warrant[ed] the gravest sanction, disbarment, for the protection of the public." Id. at 367, 14 A.3d at 658.

In Shuler, 443 Md. at 506-07, 117 A.3d at 46, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

> In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have

caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with [rules or orders of the disciplinary agency]; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [Bar Counsel] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Brackets, citation, and ellipses omitted). Indeed, when making a determination regarding sanctions, "[w]e look not to the number of rules broken, but to the lawyer's conduct." Thomas, 440 Md. at 556, 103 A.3d at 649 (citation omitted).

Here, in the reciprocal discipline matter, Allenbaugh violated MLRPC 1.1, 1.3, 3.2,

- 28 -

3.4(c), and 8.4(d) by failing to file a brief and appendix on his client's behalf in an appeal.[10]

This conduct showed a disregard for his client's interests and demonstrated noncompliance with the Fourth Circuit's orders. Because Allenbaugh failed to do the very work that he was appointed to do—*i.e.*, file a brief and appendix—Allenbaugh's behavior raises concern about the need to protect potential future clients.

Allenbaugh's conduct in the Raphael matter, which occurred prior to his conduct in the reciprocal discipline matter, increases the concern regarding the need to protect the public from such conduct in the future. Specifically, Allenbaugh violated MLRPC 1.1, 1.4(a)(2), 1.5(a), 1.15(a), 1.15(c), 8.1(b), and 8.4(d), demonstrating a lack of competence, a failure to communicate with Raphael, the charging of unreasonable fees, a failure to place unearned fees in trust, and a failure to respond to Bar Counsel. In the aggregate, such conduct reveals that Allenbaugh flagrantly neglected Raphael's affairs. Indeed, Allenbaugh violated MLRPC 1.4(a)(2) and 1.5(a) by failing to respond to Raphael and by retaining the $5,000 that Raphael had paid him. Allenbaugh's conduct was injurious to Raphael and his family. If Raphael and his family seek to re-enter the United States, they may be prevented from doing so by DHS because of having overstayed their previous visas.

---

[10]By order dated September 11, 2014, the Fourth Circuit suspended Allenbaugh from the practice of law before the Fourth Circuit for two years. Although, in response to this Court's show cause order, Allenbaugh alleged that the two-year suspension constituted a violation of due process, the record reflects that, prior to imposing the two-year suspension, the Standing Panel directed Allenbaugh to show cause as to why discipline should not have been imposed, and Allenbaugh failed to respond. Accordingly, Allenbaugh has not demonstrated that the Fourth Circuit "procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process[.]" Md. R. 16-773(e)(1).

In short, Allenbaugh failed to perform meaningful legal work for Raphael and has endangered Raphael's and his family's ability to immigrate to the United States.

The hearing judge found the following aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) "bad faith obstruction of the attorney disciplinary proceeding by intentionally failing to comply with rules or orders of the Commission"; (4) a refusal to acknowledge wrongful nature of conduct; (5) vulnerability of victim; (6) substantial experience in the practice of law; and (7) indifference to making restitution.

In addition to the serious misconduct discussed above, upon our independent review, we note the same seven aggravating factors: (1) a pattern of misconduct; (2) multiple violations of the MLRPC; (3) bad faith obstruction of the attorney discipline proceeding; (4) a refusal to acknowledge the misconduct's wrongful nature; (5) the victim's vulnerability; (6) substantial experience in the practice of law; and (7) indifference to making restitution or rectifying the misconduct's consequences.

To begin, there is a pattern of misconduct. In both the reciprocal discipline matter and the Raphael matter, Allenbaugh did not represent his client competently. Both matters involve instances in which Allenbaugh failed to take action on behalf of a client when he was obligated to do so.

Next, Allenbaugh engaged in multiple violations of the MLRPC. In the reciprocal discipline matter, Allenbaugh violated MLRPC 1.1, 1.3, 3.2, 3.4(c), and 8.4(d). In the Raphael matter, Allenbaugh violated MLRPC 1.1, 1.4(a)(2), 1.5(a), 1.15(a), 1.15(c), 8.1(b), and 8.4(d).

Allenbaugh's repeated failure to respond to Bar Counsel constitutes an obstruction

of the attorney disciplinary proceeding. Allenbaugh failed to respond to Raphael's complaint when forwarded by Bar Counsel during the investigation in the instant case, failed to attend two scheduled appointments with Bar Counsel's investigator, and failed to respond to discovery requests by Bar Counsel.

Allenbaugh has not acknowledged the wrongful nature of his conduct in the Raphael matter. In his response to this Court's show cause order in the reciprocal discipline matter, Allenbaugh stated that there was no excuse for his behavior and characterized it as "unfortunate and eminently regrettable." Allenbaugh, however, has not acknowledged in any way the wrongful nature of his misconduct in the Raphael matter, nor has he demonstrated any remorse.

Raphael's status as an immigrant rendered him particularly vulnerable to Allenbaugh's misconduct. See Thomas, 440 Md. at 558, 103 A.3d at 649 ("We have recognized previously the special vulnerability of immigrants as clients."); Attorney Grievance Comm'n v. Brisbon, 422 Md. 625, 642, 31 A.3d 110, 120 (2011) (The General Assembly enacted the Maryland Immigration Consultant Act "to offer simple protection to extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves, from being preyed on[.]" (Internal quotation marks omitted)).

Allenbaugh was admitted to the Maryland Bar on December 12, 2000. Thus, he has over fifteen years of experience in the practice of law, and had over a decade of experience at the time of the misconduct in the reciprocal discipline matter and the Raphael matter, constituting substantial experience in the practice of law—an aggravating factor.

Finally, Allenbaugh has not attempted to rectify his wrongdoing. He continues to

retain the $5,000 that he charged Raphael and refuses to account for the funds. Additionally, Allenbaugh has continued to be unresponsive to Bar Counsel throughout this attorney discipline proceeding.

The hearing judge found that Allenbaugh provided no evidence of mitigating factors. As this Court observed in Thomas, 440 Md. at 557, 103 A.3d at 649, "[m]itigation is not on the table . . . without the attorney providing supporting evidence of the existence of such factors." (Citation and internal quotation marks omitted). We are aware that Allenbaugh contended in his response to this Court's show cause order that his misconduct stemmed from a depressive episode, for which he stated that he has sought treatment. Attached as an exhibit to Allenbaugh's response to this Court's show cause order was a letter, dated March 27, 2015, from a psychiatrist stating that Allenbaugh had been diagnosed with Generalized Anxiety Disorder and Major Depressive Disorder, and was being treated with medication. The psychiatrist's letter does not mention the reciprocal discipline matter, does not provide a date with respect to the onset of the alleged disorders, and does not indicate that Allenbaugh's ability to practice law was impacted in any way. Allenbaugh failed to appear for the scheduled evidentiary hearing and failed to submit any evidence with respect to the alleged mental health disorders, and, as such, has failed to demonstrate that the disorders affected his conduct in the reciprocal discipline matter.

Notably, in the Raphael matter, Allenbaugh failed to file an answer to the Petition for Disciplinary or Remedial Action or to present any mitigating evidence whatsoever with respect to his misconduct. Although a diagnosis of depression and/or anxiety at the time of a lawyer's misconduct may be a mitigating factor, in this case, the hearing judge is

correct that Allenbaugh presented no mitigating evidence as to either the reciprocal discipline matter or the Raphael matter. Allenbaugh has not linked the diagnosis of depression and/or anxiety to his misconduct in the reciprocal discipline matter, or attempted to address his misconduct in the Raphael matter. Accordingly, we discern no mitigating factors. Taken together, the flagrancy of Allenbaugh's misconduct in the reciprocal discipline matter and the Raphael matter, along with the multitude of aggravating factors, warrant disbarment.

For the above reasons, on October 7, 2016, we disbarred Allenbaugh and awarded costs against him.